**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROZMAN LEGAL GROUP, P.C., | ) | |
| | ) | |
| Plaintiff, | ) | No. 12-CV-4016 |
| | ) | |
| v. | ) | |
| | ) | |
| LEGALZOOM.COM, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES Plaintiff, Rozman Legal Group, P.C., by and through its attorney Lance R. Minor of the Law Office of Lance R. Minor, Ltd., and for its Complaint against Defendant, Legalzoom.com, Inc., aver as follows:

### The Parties

1.    Plaintiff, Rozman Legal Group, P.C. ("Rozman Legal Group"), is an Illinois professional corporation with its principal place of business located in Chicago, Illinois.

2.    On information and belief, Defendant, Legalzoom.com, Inc. ("Legalzoom"), is a Delaware corporation with its principal place of business located in Glendale, California.

### Jurisdiction and Venue

3.    This Court has jurisdiction over the subject matter of this action pursuant to 17 U.S.C. § 501(b) and 28 U.S.C. § 1331. Jurisdiction over the state and common law claims is also appropriate under 28 U.S.C. §1367(a) and principles of pendent jurisdiction.

4.    Venue in this judicial district is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## Background Allegations

5.      Alexander Rozman ("Rozman") is an attorney who is licensed to practice law in Illinois and New York. Rozman is the President of Rozman Legal Group. Rozman Legal Group provides legal services to clients located in Illinois and New York.

6.      Legalzoom is an on-line legal document service that provides services to customers in almost all of the fifty (50) states, including but not limited to Illinois, Indiana, and New York.

7.      Sometime before March 2009, Legalzoom became interested in gauging its customers' interest in an attorney locator program through its website. The pilot program was scheduled to launch on April 1, 2009 and last a minimum of two months. During the pilot program, Legalzoom was to provide free leads to prospective law firms in exchange for feedback and data collection on the success of the program. In March 2009, Rozman Legal Group expressed an interest in becoming one of the law firms to which Legalzoom referred its customers. Rozman Legal Group was selected by Legalzoom to be one of the law firms for the program. After the pilot program ended, Rozman Legal Group became a member of Legalzoom's attorney locator program and purchased family law referrals from Legalzoom at $35 per lead.

8.      On March 24, 2010, Rozman met with Carter Gaffney and Allen Rodriguez of Legalzoom at Ruth's Chris Steakhouse in Chicago to discuss some ideas he had which could benefit Legalzoom. The parties executed a non-disclosure agreement prior to their meeting ("NDA"). One of Rozman's ideas was the creation of a legal plan whereby Legalzoom customers could pay a monthly fee for access to an approved attorney. Rozman proposed that one of the services provided by the legal plan would be a "Legal Tune-up: A comprehensive diagnosis of your legal health." It would be a way of approaching clients with a service rather than waiting for the client to self-identify any

2

problems they may have. Rozman also suggested video-conferencing and web appointment scheduling technologies that have been and are being implemented by Legalzoom without credit to Rozman. A copy of the NDA is attached hereto as Exhibit A.

9.       Rozman also suggested that the parties enter into a joint venture relationship so that he could help Legalzoom expand its business in the Midwest and East Coast.

10.       In April 2010, Allen Rodriguez informed Rozman that Legalzoom was creating a legal plan "that will require law firms to fulfill various benefits included in the plans." Mr. Rodriguez told Rozman that he wanted Rozman Legal Group to work as one of its plan attorneys. Mr. Rodriguez also expressed interest in expanding Rozman's business opportunities with Legalzoom once the parties had a chance to work with each other a while. On May 26, 2010, Mr. Rodriguez invited Rozman to Los Angeles to meet Legalzoom's Director of Legal Product Development, James Peters, and Carter Gaffney to discuss Rozman's ideas for the joint venture.

11.       On June 3, 2010, Rozman traveled to Los Angeles and was given a tour of the Legalzoom headquarters by Allen Rodriguez. Rozman discussed his joint venture proposals and the Legal Tune-Up idea in a meeting with Allen Rodriguez, Carter Gaffney and James Peters.

12.       On or about August 7, 2010, Rozman Legal Group and Legalzoom executed a Firm Panel Agreement whereby Rozman Legal Group joined Legalzoom's "Plan as a provider of legal and other related services" for Plan Members in New York. A copy of the Firm Panel Agreement for New York is attached hereto as Exhibit B.

13.       On or about September 10, 2010, Rozman Legal Group and Legalzoom executed a Firm Panel Agreement whereby Rozman Legal Group joined Legalzoom's "Plan as a provider of

3

legal and other related services" for Plan Members in Illinois. A copy of the Firm Panel Agreement for Illinois is attached hereto as Exhibit C.

14.     On or about October 6, 2010, Rozman Legal Group and Legalzoom executed a Firm Panel Agreement whereby Rozman Legal Group joined Legalzoom's "Plan as a provider of legal and other related services" for Plan Members in Indiana. A copy of the Firm Panel Agreement for Indiana is attached hereto as Exhibit D.

15.     At the time Rozman Legal Group executed the three Firm Panel Agreements, Legalzoom had a single legal plan which provided personal legal services to individuals. Since that time, Legalzoom has also started offering a legal plan to businesses with a broader range of services. Currently, the two plans are being marketed as Legalzoom's "Personal Attorney Legal Plan" and "Business Attorney Legal Plan" (referred to collectively herein as the "Plan"). The Plan provides Legalzoom's customers with access to an attorney for a monthly fee ("Plan Members"). See e.g. Exhibit E.

16.     Pursuant to the three Firm Panel Agreements, Legalzoom engaged Rozman Legal Group as an independent contractor because a non-attorney firm could not share legal fees with an attorney thus the independent contractor agreement was the only lawful arragement. As an independent contractor, Rozman Legal Group was to provide services directly to Plan Members and to directly bill Plan Members for the "for-fee" services it did provide. Legalzoom was required to provide Rozman Legal Group with an updated list of Plan Members on a monthly basis so that Rozman Legal Group could verify that the person seeking services pursuant to any of the Agreements was a Plan Member in good standing. Legalzoom was required to pay an administrative fee to Rozman Legal Group "for each Plan Member who has been assigned to [Rozman Legal

4

Group] for a complete calendar month pursuant to the New York and Indiana Firm Panel Agreements." See New York and Indiana Firm Panel Agreements, Sec. 1.

17.     Rozman Legal Group was entitled to "receive $3.00 as an administrative fee for each Plan Group Member that is assigned to the [Rozman Legal Group] for one (1) full calendar month in New York and Indiana. The 'Plan Group' shall mean the Primary member, his or her spouse or registered domestic partner, and other qualified dependents." See New York and Indiana Firm Panel Agreements, Ex. A, Sec. 1.

18.     The three Agreements further provided that:

> An attorney-client relationship exists exclusively between [the Rozman Legal Group] and Plan Members. [Legalzoom] will not interfere in any manner whatsoever with that relationship, nor shall it participate in or interfere with the exercise of [the Rozman Legal Group's] independent professional legal judgment in providing Services to Plan Members.

* * * *

> As between [Legalzoom] and [the Rozman Legal Group], all files relating to the rendering of Services to Plan members by [the Rozman Legal Group] are the sole property of [the Rozman Legal Group] and are subject to attorney-client privilege.

See Firm Panel Agreements, Secs. 2.4 & 5.6.

19.     The three Agreements included as one of their free Plan Benefits a "Legal Check-Up" which was substantially identical to the idea of a "Legal Tune-up" Rozman had previously pitched to Legalzoom. See Firm Panel Agreements, Ex. A. Sec. II(A)(3).

20.     After executing the Agreements, Rozman Legal Group started to and did perform services for Plan Members in Illinois, Indiana and New York.

21.     Throughout Fall 2010, Rozman continued working with Legalzoom to give them ideas for the Plan.

5

22. Rozman Legal Group devoted substantial time, effort and other resources to service Plan Members' needs. Rozman Legal Group leased new office space in New York City and hired new attorneys to accommodate the increase and anticipated further increase in its business. Rozman Legal Group also hired an attorney licensed in Indiana to work out of its Chicago offices and an attorney licensed in Michigan for future Michigan plan work at such time as Michigan approved the Legalzoom plan.

23. Legalzoom refused and failed to ever provide the Rozman Legal Group with a list of Plan Members every month in violation of the Firm Panel Agreements despite Rozman's repeated requests. Rozman Legal Group was unable to verify that the persons seeking services pursuant to the Agreements were Plan Members in good standing. Rozman Legal Group was also unable to verify the proper amount of administrative fees it was supposed to be receiving from Legalzoom each month for New York and Indiana. Rozman was told by Allen Rodriguez of Legalzoom not to worry about getting a list as their technology was evolving too quickly and to trust that Legalzoom would take care of him.

24. Rozman discovered that Legalzoom was giving away free one week and one month plan memberships and that Legalzoom was not paying Rozman Legal Group an administrative fee for those Plan Members in violation of the Agreement. Rozman was told by Carter Gaffney and Allen Rodriguez of Legalzoom that free and trial memberships would attract more paying customers and that this would benefit Rozman Legal Group by ensuring larger client retention and thus larger future payments.

25. Rozman also discovered that Legalzoom breached the Firm Panel Agreements by secretly and deceptively cherry-picking desirable personal injury, medical malpractice and other

6

lucrative matters for Plan Members in Illinois, Indiana and New York and selling them as leads to other attorneys or giving them to Legalzoom's in-house attorneys. For example, upon information and belief, Illinois plan members with Chapter 7 bankruptcy inquiries were sold to the Illinois law firm, Legal Helpers; patent related plan member inquiries were funneled to Legalzoom's in-house patent attorneys.

26.     Allen Rodriguez told Rozman that Legalzoom sold family law leads usually for $75 and mesothelioma leads for as much as $1000 despite the Legalzoom policy that customer information was not sold to third parties.

27.     When Legalzoom did pay Rozman Legal Group the monthly administrative fees for New York and Indiana it was usually late and not within the thirty (30) days required by the Firm Panel Agreements.

28.     Even though the Firm Panel Agreements provided that Legalzoom was not to interfere with the attorney-client relationship between Rozman Legal Group and Plan Members, Legalzoom staff discouraged Rozman Legal Group from entering into limited representation or general retainer agreements with Plan Members so they could maintain control of the relationship with Legalzoom customers. Legalzoom even advertised in their website that customers were assigned a plan attorney insinuating that an attorney-client relationship existed between members of the public and an attorney with whom they had never spoken.

29.     Rozman was instructed by a Legalzoom in-house attorney to answer Plan member questions generally and rhetorically so as to specifically not create liability for Rozman Legal Group or Legalzoom. For example, a common plan member inquiry was for Rozman Legal Group to review whether potential conflicts of the customer's trademark search results conducted by Legalzoom

7

would be approved by the USPTO. Legalzoom instructed Rozman Legal Group to answer rhetorically by asking the customer "what do you think?" and to deflect the question by stating that a similar trademark result was a bad business decision in an attempt to skirt answering the legal question posed. Rozman refused to be controlled and directed by Legalzoom, a non-attorney firm as such compliance would be a violation of his attorney ethics.

30.    Rozman was told by Allen Rodriguez of Legalzoom that the purpose of the Plan was to provide good customer service and that legal advice was ancillary. In instructing Rozman of Legalzoom's expectations of how plan attorneys were required to conduct themselves with customers, Rodriguez made an analogy to the physician-patient relationship: "patients don't question whether their doctor's advice and analysis is correct, they form their impression based on the doctor's bedside manner or customer service skills. Similarly, Legalzoom and customers don't care what legal advice is provided or if it is correct as long as the customer receives a positive customer service experience." Rozman stated that the competent delivery of legal services includes issue spotting and sometimes delivering "bad news" to their clients and that telling customers everything would be "okay" just to ensure a positive customer service experience may constitute malpractice.

31.    Shortly thereafter, Legalzoom created and required Rozman Legal Group to maintain a high "Willingness to Refer" ("WTR") score, a measuring device for whether Legalzoom plan attorneys would remain or be dismissed from the Plan.

32.    Rozman believes that the WTR score was utilized to control Rozman Legal Group and other Plan attorneys and their attorney-client relationships with Plan Members because it puts a premium on making Legalzoom's customers happy rather than giving sound legal advice.

8

33.     Rozman disputed Legalzoom's use of the WTR score on many occasions. Carter Gaffney repeatedly disapproved of Rozman's critique even going to the length of publicly chastising Rozman's WTR critiques at the 2012 Attorney Interact Conference.

34.     Rozman was instructed by Legalzoom employees, such as Richard Kort, that Rozman Legal Group and other plan attorneys could not "up-sell attorney services" over Legalzoom products.

35.     On February 9, 2012, Rozman and other Plan attorneys were informed by Richard Kort at the Attorney Interact Conference that Legalzoom was introducing a "Secret Shopper" program whereby fake Plan Members would ask Plan attorneys challenging legal questions to be graded for various criteria including to see whether Plan attorneys were "up-selling" their own services rather than Legalzoom products. Rozman and the other Plan attorneys were told that overly up-selling attorney services was a basis for termination from the Plan.

36.     Legalzoom required Rozman Legal Group to provide services that were not included in the Plan. The Plan provides Plan Members with certain no-fee services. One benefit is a one-half (1/2) hour telephone consultation on any new legal matter. Tax-related matters were specifically excluded as part of that no-fee service. Another no-fee benefit is the review of a legal document of up to ten (10) pages in length for new legal matters. However, Legalzoom routinely forwarded tax-related questions and documents over ten (10) pages to Rozman Legal Group as part of the no-fee package. If Rozman refused to provide the excluded service he risked a lowered Rozman Legal Group WTR score subjecting it to possible termination from the Plan.

37.     Legalzoom required Rozman Legal Group to adopt TimeTrade technology to schedule Plan Member even though it was not required by the Agreements. Rozman Legal Group was forced

9

to incur the expense of converting all of its offices from an Apple based platform to a PC based platform to accommodate the limitations of Legalzoom's mandatory implementation of TimeTrade.

38.     At the Attorney Interact conference on February 9, 2012, Legalzoom also required Rozman Legal Group to provide certain legal services at a flat fee rate which they would advertise in the future on the Legalzoom website and in national advertising and that Rozman Legal Group was not allowed to exceed the Legalzoom mandated set prices. Rozman objected to Legalzoom's control of his relationship with his clients.

39.     Despite the Agreements' provisions that Rozman Legal Group was to provide services directly to Plan Members, to directly bill Plan Members for the services it did provide, and that Legalzoom was not to interfere with the attorney-client relationship, Legalzoom intervened in a fee dispute between the Rozman Legal Group and a New York Plan Member.

40.     Legalzoom informed Rozman that Rozman Legal Group had to resign as the Plan's New York attorney or Rozman Legal Group would be removed as a Plan attorney for all three jurisdictions, Illinois, Indiana and New York. Rozman agreed to resign Rozman Legal Group from New York.

41.     Rozman was then informed by Carter Gaffney of Legalzoom that Rozman Legal Group could not use an Indiana licensed attorney working out of its offices in Chicago to advise Plan Members located in Indiana. Instead, Rozman Legal Group was required to have a physical presence in Indiana even though all contact with Plan Members was via telephone.

42.     Rozman Legal Group entered into a referral relationship with an attorney located in Indiana to comply with the extra-contractual conditions Legalzoom was imposing upon it. Allen Rodriguez of Legalzoom informed Rozman that an unpaid referral relationship was satisfactory as

10

some of the other plan attorneys had identical unpaid referral relationships. Subsequent to Rozman's conversation with Allen Rodriguez, Carter Gaffney of Legalzoom informed Rozman that the Indiana attorney should have been made an employee and receiving a salary or in the alternative direct compensation as an independent contractor for advising Plan Members and that as a result Legalzoom would decide what to do with Rozman Legal Group.

43.     On information and belief, other Plan attorneys are allowed to maintain referral relationships with attorneys for certain jurisdictions.

44.     Legalzoom's Attorney Services Group and other plan attorneys serving as Legalzoom representatives instructed Rozman Legal Group to utilize inexperienced "people pleaser" attorneys with zero to three years of experience and to create separate websites and even firm names to insulate Legalzoom and the plan attorney provider from potential litigation, especially given Legalzoom's history of lawsuits for improper estate planning and the unauthorized practice of law.

45.     Rozman sent Chas Rampenthal, a licensed attorney and the General Counsel of Legalzoom, a letter detailing all of the deceptive practices to the public and inappropriate intrusions into the attorney-client relationship by Legalzoom that needed immediate redress. Rampenthal refused to make the required changes.

## COUNT I
## BREACH OF FIRM PANEL AGREEMENTS

46.     Plaintiff incorporates the allegations contained in Paragraphs 1 through 45 as if set forth fully herein.

47.     Rozman Legal Group fully performed its obligations under the Illinois, Indiana and New York Firm Panel Agreements.

11

48.     As is alleged more specifically above, Legalzoom breached the Agreements by, *inter alia*, failing to report the number of Plan Members in Illinois, Indiana and New York to Rozman Legal Group, failing to pay Rozman Legal Group administrative fees for Indiana and New York Plan Members, sending lucrative Illinois, Indiana and New York Plan Member cases to other attorneys, and interfering with the attorney-client relationship between Rozman Legal Group and Plan Members.

49.     Legalzoom also breached the Agreements when, without cause, it leveraged a dispute between Rozman Legal Group and a Plan Member to force Rozman Legal Group out of New York.

50.     As a result of Legalzoom's breach of the Agreements, Rozman Legal Group has suffered damages.

WHEREFORE, Plaintiff, Rozman Legal Group, P.C., prays that this Honorable Court enter judgment in its favor and against Defendant, Legalzoom.com, Inc., for compensatory damages in an amount in excess of $75,000, for Rozman Legal Group, P.C.'s costs, and for such other and further relief as this Court deems appropriate.

## COUNT II
## BREACH OF NON-DISCLOSURE AGREEMENT

51.     Plaintiff incorporates the allegations contained in Paragraphs 1 through 45 as if set forth fully herein.

52.     Rozman Legal Group fully performed its obligations under the NDA.

53.     As is alleged more specifically above, Legalzoom breached the NDA by, *inter alia*, taking Rozman's ideas, using Rozman's ideas as its own and offering products similar to Rozman's ideas to the public without compensating Rozman Legal Group.

12

54.     As a result of Legalzoom's breach of the NDA, Rozman Legal Group has suffered damages.

WHEREFORE, Plaintiff, Rozman Legal Group, P.C., prays that this Honorable Court enter judgment in its favor and against Defendant, Legalzoom.com, Inc., for compensatory damages in an amount in excess of $75,000, for Rozman Legal Group, P.C.'s costs, and for such other and further relief as this Court deems appropriate.

## COUNT III
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

55.     Plaintiff incorporates the allegations contained in Paragraphs 1 through 45 as if set forth fully herein.

56.     The agreements between Rozman Legal Group and Legalzoom contain implied covenants of good faith and fair dealing. Legalzoom breached those covenants.

57.     The actions of Legalzoom described in this Complaint have at all times relevant to this action been willful and/or knowing.

58.     As a result of Legalzoom's breach of those covenants, Rozman Legal Group has been irreparably injured and suffered monetary damages.

WHEREFORE, Plaintiff, Rozman Legal Group, P.C., prays that this Honorable Court enter judgment in its favor and against Defendant, Legalzoom.com, Inc., for compensatory damages in an amount in excess of $75,000, for Rozman Legal Group, P.C.'s costs, and for such other and further relief as this Court deems appropriate.

13

## COUNT IV
## UNJUST ENRICHMENT

59.     Plaintiff incorporates the allegations contained in Paragraphs 1 through 45 as if set forth fully herein.

60.     As a result of Legalzoom's actions as described in this Complaint, Legalzoom has been enriched at Rozman Legal Group's expense.

61.     As a result of Legalzoom's actions as described in this Complaint, Rozman Legal Group has been deprived of a valuable benefit.

62.     Legalzoom cannot establish any justification for its unjust enrichment at Rozman Legal Group's expense.

63.     Legalzoom's actions as described in this Complaint have at all times relevant to this action been willful and/or knowing.

64.     As a result of Legalzoom's actions, Rozman Legal Group has been irreparably injured and suffered monetary damages.

WHEREFORE, Plaintiff, Rozman Legal Group, P.C., prays that this Honorable Court enter judgment in its favor and against Defendant, Legalzoom.com, Inc., for compensatory damages in an amount in excess of $75,000, for Rozman Legal Group, P.C.'s costs, and for such other and further relief as this Court deems appropriate.

## COUNT V
## COPYRIGHT INFRINGEMENT 17 U.S.C. § 101 et seq.

65.     Plaintiff incorporates the allegations contained in Paragraphs 1 through 45 as if set forth fully herein.

14

66.     Rozman Legal Group is the owner of the copyright covering Rozman's legal plan and legal tune-up product.

67.     Without Rozman Legal Group's permission, Legalzoom copied the copyrighted subject matter and created a derivative work thereof. This unauthorized derivative work is or was copied and used by Legalzoom in connection with Legalzoom's website. Legalzoom may have infringed Rozman Legal Group's copyrights in additional ways.

68.     Legalzoom's actions as described in this Complaint constitute copyright infringement of Rozman's legal plan and legal tune-up product. Rozman's legal plan and legal tune-up product constitute copyrightable subject matter.

69.     Legalzoom's actions as described in this Complaint have at all times relevant to this action been willful and/or knowing.

70.     As a result of Legalzoom's actions, Rozman Legal Group has been irreparably injured and has suffered monetary damages.

WHEREFORE, Plaintiff, Rozman Legal Group, P.C., prays that this Honorable Court enter judgment in its favor and against Defendant, Legalzoom.com, Inc., for compensatory damages in an amount in excess of $75,000, for Rozman Legal Group, P.C.'s costs, and for such other and further relief as this Court deems appropriate.

15

Rozman Legal Group, P.C.


By: ___/s/ Lance R. Minor_____
One of its Attorneys

Lance R. Minor (IL No. 6256405)
Law Office of Lance R. Minor, Ltd.
203 North La Salle Street
Suite 1620
Chicago, IL 60601
Tel: 773.469.1520

16